# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 16, 2014

## ROGER G. VAN BLARCOM v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F66985     Don R. Ash, Judge**

___

**No. M2012-00949-CCA-R3-PC - Filed March 12, 2015**

___

The petitioner, Roger G. Van Blarcom, was initially charged with first degree murder, a Class A felony, and several other crimes. In exchange for the dismissal of the other charges and a reduction of the first degree murder charge, the petitioner pled guilty to second degree murder, a Class A felony, and agreed to an out-of-range sentence of thirty years to be served at 100%. He now appeals the denial of his petition for post-conviction relief, arguing that he received the ineffective assistance of counsel and that his guilty plea was not knowing and voluntary. After reviewing the record, the briefs of the parties, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J. and ROBERT W. WEDEMEYER, J., joined.

Chelsea Nicholson, Nashville, Tennessee, for the appellant, Roger G. Van Blarcom.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Senior Counsel; William C. Whitesell, Jr., District Attorney General; and Jennings Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the petitioner's guilty plea hearing, the State presented the following as proof that would have been adduced had the defendant gone to trial:

[T]he State would have presented testimony to include that of Detective Doug Arrington with the Murfreesboro Police Department who would have come forward to testify that on or about the date of 10-14-2009 through investigation it was determined that [the petitioner] had struck his elderly mother in the head with a baseball bat and in the body with a baseball bat repeatedly. He had called 911 after leaving his mother's body lying on the floor of the garage and had a conversation with the dispatcher. In this conversation the [petitioner] stated that he would like to report a premeditated first degree murder. Towards the end of the conversation he states to the dispatcher that he can hear his mother in the background in the garage and he states that he ought to go finish her off. The dispatcher attempts to talk him out of doing so, however he does put the phone down and hang[s] up on the dispatcher and returns to the garage. At approximately this same time police officers had converged on the house, kicked in the back door, came inside and saw [the petitioner] standing over his mother as she lay on the ground bleeding. He was ordered to retreat at gunpoint. Was then placed under arrest. His mother was taken to the hospital by ambulance where as a result of her injuries that she suffered at the hands of [the petitioner] she did pass some few days later.

At the hearing, the prosecutor stated that the petitioner had "expressly agreed" to enter an out of range plea to a thirty-year sentence as a Range II, multiple offender to be served at 100% in exchange for a reduction of the charge from first degree murder to second degree murder and the dismissal of several other charges. The prosecutor explained that because the sentencing range for a Range I offender for a Class A felony was fifteen to twenty-five years, the petitioner had to agree to a Range II classification to receive the thirty-year sentence. The prosecutor stated that there was a negotiated plea agreement that reflected the arrangement. Trial counsel agreed that the prosecutor accurately described the plea agreement.

The petitioner informed the trial court that he had not been coerced or forced into pleading guilty and that he was doing so freely and voluntarily. He agreed that he was satisfied with his attorney's representation and that he did not have any complaints regarding the representation. Although he did not agree with the State's recitation of the facts, he agreed that he still desired to enter a best interest plea.

The petitioner agreed that he discussed the different elements of first and second degree murder with trial counsel and that he understood that he was pleading guilty to a lesser offense than the offense with which he was initially charged. He confirmed that trial counsel explained the range of punishment, the burden the State would have to meet to obtain a guilty verdict, and any possible defenses he may have. The petitioner agreed that he

2

understood the rights that he was waiving by pleading guilty. He also confirmed that he was pleading guilty to an out-of-range sentence.

When the trial court asked, "So you're agreeing to this multiple 35 percent offense and that's to get to that 30 year plateau right there[,]" the petitioner agreed. The petitioner had reviewed the plea agreement with trial counsel and stated that his only issue with understanding the agreement "was that [the sentence] was at 100 percent instead of 80." However, he stated that he understood that his sentence would be served at 100% and confirmed that he signed the plea agreement.

At the conclusion of the hearing, the trial court found the petitioner guilty of second degree murder and sentenced him to serve thirty years as a multiple offender at 100%.

At the post-conviction hearing, the petitioner represented himself, and standby counsel was available to assist the petitioner if needed. The petitioner called trial counsel as his first witness. Trial counsel agreed that the petitioner was incarcerated prior to pleading guilty and that he discussed a plea agreement with the petitioner several times. He said that the petitioner ultimately pled guilty to second degree murder in exchange for a thirty-year sentence as a Range II offender. Trial counsel testified that he had several discussions with the petitioner regarding the meaning of the terms "Range I" and "Range II." He explained to the petitioner that second degree murder was a Class A felony, which carried an ultimate range of fifteen to sixty years of incarceration. He further explained that the sentencing range for a Range I offender was fifteen to twenty-five years and that the range for a Range II offender started at twenty-five years.

Trial counsel testified that the State offered a sentence of thirty years, which would require the petitioner to waive a Range I sentence. He stated that the petitioner decided to waive his offender status due to the other charges he faced. Trial counsel said that the petitioner faced more than thirty years if he was convicted at trial. He testified that the petitioner accepted the State's offer in order to avoid the risk of a lengthier sentence.

Trial counsel recalled telling the district attorney during the course of negotiations that he explained the difference between Range I and Range II to the petitioner. He testified that at the guilty plea hearing, the petitioner informed the trial court that the petitioner understood the consequences of pleading guilty as a Range II offender.

Trial counsel testified that he was unaware of any blood alcohol test that was performed. He recalled that some blood tests were conducted, but he said that the purpose of the test was to determine the source of the blood found at the crime scene, not to test the blood alcohol level.

3

The petitioner testified that trial counsel informed him that the sentencing range for second degree murder was twenty-five to forty years. He stated that trial counsel was aware that the petitioner had no prior criminal record and would have no way of knowing what "Range I" and "Range II" meant. The petitioner testified that trial counsel never discussed with him the difference between a Range I and a Range II sentence. He accused trial counsel of being deceptive, and he stated that the deception caused his guilty plea to be coerced.

The petitioner recalled the day when he entered his guilty plea, but he testified that he did not recall the trial court explaining the consequences of pleading guilty as a Range II offender. He stated that when the trial court asked, "So you're agreeing to this Multiple, 35 percent offense. And that's to get to the 30 year plateau right there. You understand that as well," he replied that he understood because he believed he was agreeing to a sentence to be served at 35%. He testified that there were alterations to the plea agreement made in whiteout after he signed the agreement and that there were also alterations made to the judgment sheet. He agreed that the only proof that the plea agreement was changed after he signed it was his testimony at the post-conviction hearing. The petitioner stated that he was confused at the time of his guilty plea because the court initially said 35% but later said 100%. He agreed that he signed the negotiated plea agreement, which stated that the petitioner "expressly agreed" to plead out of range. He contended that he did not understand what Range I and Range II meant and that the sentencing ranges for second degree murder were added after he signed the plea agreement.

The petitioner testified that the discovery file that he received contained a notation that a detective requested a blood alcohol test "for purposes of D.N.A." A box was checked "Homicide" on the upper right-hand corner of the form, which led the petitioner to believe that standard operating procedure in homicide cases was to perform a blood alcohol test. He testified that this procedure was not followed because no blood alcohol test was ever performed.

The post-conviction court orally denied the petition, stating that it did not find the testimony of the petitioner credible. The post-conviction court also issued a written order denying the petition. In the written order, the court credited trial counsel's testimony that he explained what a Range I and Range II sentence meant to the petitioner and found that the petitioner's testimony was not credible. The post-conviction court agreed with the petitioner that portions of the plea agreement and judgment were whited out and corrected, but the court found that "it [was] clear these changes were made before the plea was entered."[1] The

[1] On the judgment, the following had been whited out: a check next to "Standard," a check next to "Multiple 35%," the date of the judgment being entered, the date the sentence is imposed, and in the "Special Conditions" box, "35%" had been crossed out and "100%" was written beneath it. On the plea agreement,

4

court found that the transcript of the guilty plea hearing negated the petitioner's assertion that he believed he was only required to serve his sentence at 35% and that the corrected plea agreement and judgment accurately reflected the petitioner's plea agreement. The court also found that the petitioner had failed to prove his allegation regarding the blood-alcohol test by clear and convincing evidence. The court noted that if the petitioner's claim was that trial counsel should have requested that the State perform the test or independently had the test performed, such a claim was not properly raised and was waived. Additionally, the court found that even if the claim was not waived, the petitioner had not established that trial counsel performed deficiently or that any deficiency caused him prejudice.

## ANALYSIS

### I. Ineffective Assistance of Counsel

The petitioner contends that he received ineffective assistance of counsel and that his plea was not knowing and voluntary. Specifically, he contends that trial counsel never discussed with him the differences between a Range I and Range II sentence and that he was given "false information regarding his range and sentence," rendering his plea involuntary.

In a claim of ineffective assistance of counsel, the defendant bears the burden of proving the allegations of fact giving rise to the claim by clear and convincing evidence. *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). This court affords the post-conviction court's findings the weight of a jury verdict, and these findings "are conclusive on appeal unless the evidence in the record preponderates against" them. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997).

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel. This right affords an individual representation that is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

---

the following was whited out: under "Range & Offender Classification," "100%" was written over in white out and "5-9" was written over white out for the petitioner's end date for jail credit.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove by clear and convincing evidence that: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the petitioner to the degree that the petitioner did not receive a fair trial. *Strickland*, 466 U.S. at 687. A petitioner satisfies the deficiency prong of the test by showing that counsel's representation fell below an objective standard of reasonableness; that is, "the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter*, 523 S.W.2d at 936); *see Strickland*, 466 U.S. at 687. The petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Courts evaluating the performance of an attorney "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). In order to fairly assess counsel's conduct, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).

Prejudice requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In order to establish prejudice in the context of a guilty plea, the petitioner must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This requires a showing of "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* If the petitioner fails to establish either deficiency or prejudice, post-conviction relief is not appropriate, and this court need not address both components if the petitioner makes an insufficient showing as to one component. *Grindstaff*, 297 S.W.3d at 216 (citing *Goad*, 938 S.W.2d at 370).

### A. Advice of Counsel

Trial counsel testified that he discussed with the petitioner what Range I and Range II meant several times and that he explained the applicable sentences for a Class A felony in each range. He explained to the petitioner the thirty-year sentence required the petitioner to waive a Range I sentence. Trial counsel also testified that the petitioner wanted to plead guilty to an out-of-range sentence in exchange for the dismissal of other charges against him and to avoid exposure to a lengthier sentence if he were convicted at trial. In its written and

6

oral findings, the post-conviction court explicitly credited the testimony of trial counsel over that of the petitioner. We conclude that the petitioner has not established that trial counsel performed deficiently. The petitioner is not entitled to any relief as to this claim.

## B. Blood Test

The petitioner asserts that trial counsel "was ineffective for failing to obtain the blood test results of the victim if these were performed." The petitioner makes no argument and cites no law to support this bare allegation. Accordingly, this issue is waived. *See* Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citations to authorities, or appropriate references to the record will be treated as waived.").

## II. Knowing and Voluntary Guilty Plea

The petitioner next argues that his plea was not knowing and voluntary because he believed that he was pleading guilty in exchange for a thirty-year sentence to be served at 35% rather than 100%. Specifically, he contends that the judgment and guilty plea agreement were altered after he signed them, which demonstrates that he did not agree to the sentence imposed.

A guilty plea is constitutional only when it is entered into knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43). In order to determine whether a plea was entered "intelligently" or "knowingly," "'[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A court must make this determination "based upon the totality of the circumstances." *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1996). A court charged with determining the nature of a guilty plea:

> must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904.

The post-conviction court agreed that portions of the judgment and plea agreement were altered but found that these changes were made prior to the entry of the plea. The court also found that the transcript of the guilty plea hearing negated the petitioner's claim that he was to serve his sentence with a 35% release eligibility. At the guilty plea hearing, the prosecutor stated that the petitioner "expressly agreed" to a thirty-year sentence as a multiple, Range II offender to be served at 100%. He explained that the petitioner had to agree to be sentenced as a Range II offender to obtain a thirty-year sentence because the sentencing range for a Range I offender was only fifteen to twenty-five years. While the trial court used the phrase "multiple 35 percent offense", the proceedings clarified that the petitioner's release eligibility would be 100%. When the trial court asked if the petitioner understood the plea agreement, the petitioner made no mention of his belief that he would serve his sentence at 35%. Instead, he stated that his only issue was that the sentence would be served at 100% instead of 80%, and he agreed that he understood that he was to serve his sentence at 100%. He made no objection when the trial court sentenced him to a thirty-year sentence as a multiple offender with 100% to serve. If the petitioner had not pled guilty, he would have faced a charge of first degree murder and the risk of a far lengthier sentence than thirty years if convicted at trial. The credited testimony of trial counsel reflected that the petitioner elected to plead guilty in exchange for the dismissal of the other charges against him and to avoid a trial and a longer sentence. We agree with the post-conviction court that the record reflects that the petitioner entered his plea knowingly and voluntarily. The petitioner is not entitled to relief as to this claim.

**Conclusion**

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE

8